UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BERNABE ENCARNACION,                             DECISION & ORDER and
                                                 REPORT & RECOMMENDATION
                    Plaintiff,
                                                 12-CV-6180CJS
        v.

GLENN GOORD, Commissioner of DOCS,
et al.,

                    Defendants.
_____


# INTRODUCTION

Currently pending before the Court is defendants' motion to amend their answers, pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, to add an affirmative defense of "forum non conveniens" under 28 U.S.C. Section 1404(a), and to transfer this case from the Western District of New York (the "Western District") to the Northern District of New York (the "Northern District"). (Docket # 38). Plaintiff opposes the transfer request. (Docket # 42). Also pending before the Court are two motions filed by plaintiff: one for appointment of counsel (Docket # 40) and one to compel defendants to produce various documents and recordings (Docket # 44).

For the following reasons, defendants' motion for transfer is denied, and plaintiff's motions for counsel and for an order compelling production are denied without prejudice. I recommend that the District Court deny defendants' motion to amend their answers.

I.     **DEFENDANTS' TRANSFER MOTION**

    A.     **Background**

        1.     **Relevant Factual Background**

Plaintiff's amended complaint alleges that the length and condition of his confinement in solitary confinement, or the special housing unit ("SHU"), at various New York State correctional facilities constituted cruel and unusual punishment in violation of his Eighth Amendment rights. (Docket # 16 at 5). Plaintiff's allegations relate specifically to his SHU confinement from August 10, 1996, through January 8, 1997, and from February 17, 1998, through March 11, 2009. (*Id.* at 5, 9, ¶ 4).

During these periods of time, plaintiff was confined in SHU at four different correctional facilities operated by the New York State Department of Corrections and Community Supervision ("DOCCS"): Auburn Correctional Facility ("Auburn") from August 1996 until January 1997 (Docket # 38-2 at 2); Elmira Correctional Facility ("Elmira") from February 1998 until October 1999 (*id.*); Southport Correctional Facility ("Southport") from October 1999 until November 2008 (*id.* at 2-3); and, Great Meadow Correctional Facility ("Great Meadow") from November 2008 until March 2009 (*id.* at 3).

Plaintiff's initial confinement in SHU at Auburn resulted from an altercation with another inmate at that facility. (*Id.* at 2) (citing *Encarnacion v. McGinnis*, 2005 WL 3018728, *1 (W.D.N.Y. 2005)). That altercation led to plaintiff's conviction, after a jury trial in Cayuga County Court, for murder in the second degree and for promoting prison contraband in the first degree. (*Id.*) (citing *Encarnacion v. McGinnis*, 2005 WL 3018728 at *1). After his conviction, plaintiff was issued a disciplinary misbehavior report at Elmira for committing those offenses, resulting in a ten-year SHU sentence. (*Id.*; Docket # 38-1 at 31). He served that term at Elmira

2

and Southport; by the time he completed it, however, he had committed subsequent offenses that resulted in the extension of his SHU confinement. (Docket # 38-2 at 2-3).

## 2. Relevant Procedural Background

Plaintiff filed his initial complaint in this action in the Southern District of New York on March 13, 2012. (Docket # 2). On April 3, 2012, United States District Judge Loretta A. Preska, *sua sponte*, transferred the case to the Western District because plaintiff alleged that he "was illegally placed in [SHU] for more than eleven (11) years as a result of an illegal disciplinary hearing held at [Elmira]," and plaintiff's "claims [thus] arose in Chemung County, which is in the Western District." (Docket # 4 at 1-2). Judge Preska also determined that venue did not properly lie in the Southern District because plaintiff did not "allege that any defendant reside[d] in [the Southern] [D]istrict or that a substantial part of the events or omissions giving rise to his claim arose in [the Southern] [D]istrict[.]" (*Id.* at 2).

After the case was transferred to the Western District, United States District Judge David G. Larimer, *sua sponte*, dismissed plaintiff's complaint, pursuant to 28 U.S.C. Sections 1915(e)(2)(B)(ii) and 1915A(b)(1). (Docket # 8). Judge Larimer determined that plaintiff's double jeopardy claim – that he was improperly issued two misbehavior reports and confined to SHU on two separate occasions related to conduct arising from one incident – had already been litigated and decided in a prior habeas corpus proceeding. (*Id.* at 3-6) (referring to *Encarnacion,* 2005 WL 3018728). Thus, the claim was barred by collateral estoppel. (*Id.* at 6).

On appeal, the Court of Appeals for the Second Circuit (the "Second Circuit") found that it lacked appellate jurisdiction to review the dismissal because Judge Larimer's decision was not a final order. (Docket # 12 at 2). The Second Circuit reasoned that Judge Larimer's decision was "silent as to [plaintiff's] allegations that he was subjected to cruel and

3

unusual punishment in violation of the Eighth Amendment," and that plaintiff's Eighth Amendment claim was unrelated to his previously-dismissed double jeopardy claim. (*Id.*). The Court concluded:

> If the district court intended to dismiss the Eighth Amendment claims as well, then it may clarify its reasons for dismissal, and re-enter final judgment. Otherwise, the Eighth Amendment claim will likely proceed to final adjudication.

(*Id.*).

Judge Larimer subsequently assessed plaintiff's original complaint "for an Eighth Amendment claim, as directed by the Second Circuit," and dismissed the complaint for failure to state a claim upon which relief may be granted. (Docket # 13 at 2) ("plaintiff does not describe unhealthy or unsafe conditions in SHU, that he was denied medical or mental health treatment, that he was subjected to excessive punishment, or other allegations sufficient to allege an Eighth Amendment claim"). However, "[i]n an abundance of caution, and in light of plaintiff's *pro se* status," Judge Larimer granted plaintiff leave to file an amended complaint "that addresses only an Eighth Amendment claim." (*Id.* at 3).

On January 26, 2015, plaintiff filed his current amended complaint. (Docket # 16). Upon review, Judge Larimer again dismissed plaintiff's Eighth Amendment claim for failure to state a claim pursuant to 28 U.S.C. Sections 1915(e)(2)(B)(ii) and 1915A(b)(1), finding that plaintiff's allegations about the conditions of his SHU confinement and resulting injuries were too general and conclusory to state a claim. (Docket # 18).

Plaintiff appealed the dismissal, and the Second Circuit remanded plaintiff's Eighth Amendment claim for further proceedings. (Docket # 22). The Court held:

> Upon review, we conclude that the district erred in dismissing [plaintiff's] amended complaint sua sponte because it did not consider the overall conditions of confinement of his SHU

4

>   sentence. In particular, the [d]istrict [c]ourt failed to consider the relevance of [plaintiff's] 11-year confinement in SHU. Moreover, [plaintiff] alleged that he was deprived of hygiene products and "daily meals" while in SHU. The district court also should have considered those allegations as part of the overall conditions of his SHU confinement. Finally, we cannot discern from the district court's analysis whether it adequately considered the possibility that the alleged violation offends contemporary standards of decency.

(*Id.* at 2) (alterations, citations, and quotations omitted). The Court also concluded that plaintiff "abandoned any challenge to the dismissal" of his double jeopardy claim because he did "not raise any issue with respect to the [d]istrict [c]ourt's dismissal" of that claim. (*Id.*).

Plaintiff's amended complaint (Docket # 16) was thereafter served on defendants Selsky, Rock, and Goord, all of whom answered through counsel. (Docket ## 25, 26, 27, 28). The summons for defendant McGinnis was returned unexecuted on November 9, 2017.[1] (Docket # 35). Counsel for defendants has represented that McGinnis "cannot be located" and, "upon information and belief, DOCCS Counsel's Office no longer has an up-to-date address on file for McGinnis." (Docket # 38-2 at 8 n.3).

### B. Discussion

#### 1. Legal Standard for Motion to Transfer Venue

Defendants move to transfer this case pursuant to 28 U.S.C. § 1404(a). That statute provides:

>   For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). In considering such a motion, the court must first inquire "whether the action could have been brought in the transferee district and, if yes, whether transfer would be an

---

[1] In a contemporaneous Order issued today, the Court directed counsel for defendants to provide to the Court *in camera* McGinnis's last known business and home addresses on record with DOCCS.

appropriate exercise of the [c]ourt's discretion." *Robertson v. Cartinhour*, 2011 WL 5175597, *3 (S.D.N.Y. 2011); *accord Smolen v. Brauer*, 177 F. Supp. 3d 797, 800 (W.D.N.Y. 2016).

As to the first inquiry, 28 U.S.C. Section 1391(b) governs proper venue for cases involving federal question jurisdiction. That section provides, *inter alia*, that "[a] civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located[.]" 28 U.S.C. § 1391(b)(1).

Regarding the second inquiry, courts should weigh the following factors:

(1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of the relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.

*Keitt v. New York*, 2013 WL 3479526, *3 (S.D.N.Y. 2013); *see also Wilshire Credit Corp. v. Barrett Capital Mgmt. Corp.*, 976 F. Supp. 174, 181 (W.D.N.Y. 1997) (weighing same factors). "Each factor need not be accorded equal weight, and other factors may be considered in the court's discretion." *WD Encore Software, LLC v. The Software MacKiev Co.*, 2016 WL 1056628, *3 (W.D.N.Y. 2016); *accord Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 477 (S.D.N.Y. 2006) ("there is no rigid formula for balancing these factors and no single one of them is determinative") (citations omitted). Moreover, "[m]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992). "The burden of demonstrating the desirability of transfer lies with the moving party, who must make a clear and convincing showing that the balance of convenience

6

favors defendants' choice." *Solar v. Annetts*, 707 F. Supp. 2d 437, 441-42 (S.D.N.Y. 2010) (quotations omitted).

## 2. **Analysis**

In this matter, plaintiff could have filed his complaint in the Northern District based upon the location of defendants' residences. "For the purposes of venue, state officers 'reside' in the district where they perform their official duties." *Rush v. Fischer*, 923 F. Supp. 2d 545, 556 (S.D.N.Y. 2013) (quotation omitted). Defendant Goord, the former Commissioner of DOCCS, performed his official duties in Albany County, New York, which is in the Northern District. (Docket # 38-1 at 61, ¶¶ 1, 3). Defendant Rock, the former Superintendent of Great Meadow, performed his official duties in Washington County, New York, which is also in the Northern District. (*Id.* at 64, ¶¶ 1, 3). Defendant Selsky, the former Assistant Commissioner and Director of the Special Housing Unit and Inmate Discipline for DOCCS, performed his official duties in Albany County, New York. (*Id.* at 67, ¶¶ 1, 3). Although defendant McGinnis has not been served in this action, plaintiff alleges that he was the former Superintendent of Southport; he thus performed his official duties in Chemung County, New York, which is located in the Western District. Based on this information, venue would have been proper in the Northern District because at least three defendants resided there and all of the named defendants resided in the State of New York. *See* 28 U.S.C. § 1391(b)(1); *see also Rush v. Fischer*, 923 F. Supp. 2d at 556 ("[b]ecause defendants Canfield, Gorge, and Oaks reside in the Western District of New York and the other defendants reside in the State of New York, venue would have been proper in the Western District of New York[;] [h]ence, the action could have been brought in the Western District of New York, satisfying the first part of the inquiry").[2]

---

[2] Because the action could have been brought in the Northern District pursuant to Section 1391(b)(1), I do not address whether subsection (b)(2), which permits actions to be brought in a district "in which a substantial part

The Court now turns to the second inquiry: whether transfer would be an appropriate exercise of discretion. In weighing the relevant considerations, the Court is mindful that plaintiff's remaining claim relates to the length and conditions of his SHU confinement and not to any alleged illegalities relating to his 1998 disciplinary hearing at Elmira.[3] Specifically, as construed by the Second Circuit, plaintiff's amended complaint asserts that "his Eighth Amendment rights were violated when he was confined in [SHU] for more than 11 years, and denied hygiene products and food." (Docket # 22 at 2). Those allegations concern the conditions of his SHU confinement at the four correctional facilities identified above.

With respect to the first factor – the convenience of the witnesses – defendants represent that the anticipated testimony concerning the length of plaintiff's SHU sentence will come from "[d]efendants' own testimony, or that of another DOCCS representative located in or near Albany County." (Docket # 38-2 at 7). Defendants also assert that "the witnesses to any alleged deprivations of items at Great Meadow . . . would also reside in the Northern District." (*Id.*). While this may be true, it is reasonable to assume that plaintiff may wish to call witnesses from Elmira or Southport to testify about those facilities' SHU conditions or any deprivations he may have experienced there while in SHU confinement, especially considering that ten of his eleven years of SHU confinement were served at those facilities. Because Elmira and Southport are located within the Western District, it would likely be more convenient for witnesses from those facilities for the case to remain in the Western District. This factor weighs against transfer.

---

of the events or omissions giving rise to the claim occurred," would also have allowed this action to have been brought there. 28 U.S.C. § 1391(b)(1).

[3] The alleged illegalities relating to plaintiff's 1998 disciplinary hearing at Elmira contained in his original complaint formed part of the basis for Judge Preska's decision to transfer the case to the Western District in the first place. (Docket # 4). Those claims have now been dismissed and abandoned by plaintiff. (Docket # 22 at 3). Defendants nonetheless have not argued that the Western District is an improper venue, only that it is a less convenient venue than the Northern District.

8

With respect to the second factor – the convenience of the parties – all parties to this action, including plaintiff, currently reside in the Northern District. Plaintiff is incarcerated at Shawangunk Correctional Facility, which is in Ulster County, New York, within the Northern District. (*Id.* at 7). Furthermore, although all of the defendants are now retired from DOCCS, they still maintain residences within the Northern District, and could more conveniently travel to the federal courthouse in Albany than to Rochester. (*See generally* Docket # 38-1 at 61-68). This factor weighs in favor of transfer, although it is possible that plaintiff could be transferred to a correctional facility outside the Northern District before this case concludes.

The Court believes that the "location of operative facts" factor favors keeping the case in the Western District. As discussed above, plaintiff's confinement in SHU spanned more than eleven years, roughly ten of which were in Elmira or Southport. In other words, plaintiff spent the overwhelming majority of his SHU confinement period – all but approximately eight months – in the Western District. Given that plaintiff's allegations relate to both the length and conditions of his SHU confinement, the "locus" of many of the operative facts relating to the claim would appear to be the Western District. Therefore, this factor weighs against transfer.

The Court finds that considerations of "the location of the relevant documents and the relative ease of access to sources of proof," "the availability of process to compel the attendance of unwilling witnesses," "the forum's familiarity with the governing law," and "the weight accorded to the plaintiff's choice of forum" do not weigh materially in favor of or against transfer. First, relevant documents are likely to be located either in the Northern District or the Western District; either way, DOCCS possesses them and can access and produce them, making them "easily portable," and rendering this factor "not a compelling consideration." *Solar v. Annetts*, 707 F. Supp. 2d at 442 ("[t]o the extent Downstate [Correctional Facility] documents

9

may be relevant, they are easily portable because each facility that has housed [plaintiff] is part of [DOCCS], and therefore this factor is not a compelling consideration") (quotations omitted).

Defendants represent that they do not anticipate that there will be any unwilling witnesses. (Docket # 38-2 at 8). "Where the movant fails to present evidence that its witnesses would be unwilling to testify, the ability to compel the attendance of witnesses is not a factor in the transfer-of-venue analysis." *Williams v. Swack*, 2013 WL 5423791, *7 (E.D.N.Y. 2013). Furthermore, both the Northern and the Western Districts are familiar with the governing law, rendering that factor neutral. Although plaintiff's choice of forum is typically given "due deference," *Solar*, 707 F. Supp. 2d at 442, plaintiff did not choose the Western District venue, but rather filed his original complaint in the Southern District. Therefore, these factors do not influence the Court's analysis.

Consideration of the relative means of the parties "has rarely been a dispositive reason to grant or deny a transfer motion." *Schoenefeld v. New York*, 2009 WL 1069159, *3 (S.D.N.Y. 2009) (quotation omitted). Here, plaintiff's custodial status will require the State to transport him to court. (*See* Docket # 38-2 at 8-9). Assuming that plaintiff remains incarcerated at Shawangunk, the burden of transporting plaintiff to the federal courthouse in Albany would likely be less substantial than the burden of transportation to the federal courthouse in Rochester. That said, considering that the distance between Shawangunk and both courthouses is significant, DOCCS may choose to move plaintiff to a facility closer to the courthouse for trial. This factor favors transfer, although not heavily.

The final factor, which considers the interests of justice, weighs against transfer. Plaintiff commenced this action in March 2012, and it has been pending in this district for over six years, since April 2012. This district has reviewed his claims three times already. None of

10

the courts that have reviewed plaintiff's allegations – the Southern District, the Western District or the Second Circuit – have questioned the appropriateness of venue here or the possibility that the Northern District would be a more convenient forum.  Defendants were served with the amended complaint in February 2017, filed their answers on April 3, 2017, and did not move for transfer until more than nine months later, on January 25, 2018.  On this record, considering the substantial period of time that plaintiff has been attempting to prosecute his claims and the inevitable delay that would attend a discretionary transfer to a third district, a transfer order would not serve the interests of justice.

In sum, weighing all the considerations, I find that the case should remain in this district and that defendants' motion for transfer should be denied.

## II.   DEFENDANTS' MOTION TO AMEND

Defendants also seek leave to amend their answers pursuant to Rule 15(a) to add an affirmative defense of "forum non conveniens" based upon 28 U.S.C. Section 1404(a). (Docket # 38 at 3-4).  Because this Court finds that discretionary transfer is inappropriate, the amendment of the answers to add such a defense is likewise unwarranted.  Accordingly, I recommend that the District Judge deny defendants' motion to amend.

## III.   PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL

It is well-settled that there is no constitutional right to appointed counsel in civil cases.  Although the Court may appoint counsel to assist indigent litigants pursuant to 28 U.S.C. § 1915(e), *see*, *e.g.*, *Sears, Roebuck and Co. v. Charles W. Sears Real Estate, Inc.*, 865 F.2d 22, 23 (2d Cir. 1988), such assignment of counsel is clearly within the judge's discretion.  *In re*

*Martin-Trigona*, 737 F.2d 1254, 1260 (2d Cir. 1984).  The factors to be considered in deciding whether or not to assign counsel include the following:

> 1. Whether the indigent's claims seem likely to be of substance;
>
> 2. Whether the indigent is able to investigate the crucial facts concerning his claim;
>
> 3. Whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder;
>
> 4. Whether the legal issues involved are complex; and
>
> 5. Whether there are any special reasons why appointment of counsel would be more likely to lead to a just determination.

*Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997); *see also Hodge v. Police Officers*, 802 F.2d 58 (2d Cir. 1986).

The Court must consider carefully the issue of appointment of counsel because "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause."  *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989).  Therefore, the Court must first look to the "likelihood of merit" of the underlying dispute, *Hendricks v. Coughlin*, 114 F.3d at 392; *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d at 174, and "even though a claim may not be characterized as frivolous, counsel should not be appointed in a case where the merits of the . . . claim are thin and his chances of prevailing are therefore poor."  *Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) (denying counsel on appeal where petitioner's appeal was not frivolous but nevertheless appeared to have little merit).

The Court has reviewed the facts presented herein in light of the factors required by law and finds, pursuant to the standards promulgated by *Hendricks*, 114 F.3d at 392, and *Hodge v. Police Officers*, 802 F.2d at 58, that the appointment of counsel is not necessary at this time. As stated above, a plaintiff seeking the appointment of counsel must demonstrate a likelihood of success on the merits. *See id*. Plaintiff has not done so at this stage. Moreover, contrary to plaintiff's contention, the legal issues in this case, while serious, do not appear to be complex. Although he asserts he does not "speak, read and understand [the] English language very well" (Docket # 40 at ¶ 1), his filings are legible and comprehensible. In addition, he will have a Spanish interpreter at his deposition. (*See* Docket # 55). On this record, plaintiff's request for the appointment of counsel **(Docket # 40)** is **DENIED without prejudice** at this time. It is the plaintiff's responsibility to retain an attorney or press forward with this lawsuit *pro se*. 28 U.S.C. § 1654.

### IV. PLAINTIFF'S MOTION TO COMPEL

The final motion before the court is a motion filed by plaintiff seeking an order compelling defendants to produce various documents and recordings to him. (Docket # 44). Defendants oppose the motion on various grounds, the first of which is that plaintiff did not confer with counsel as required by Rule 37(a)(1) of the Federal Rules of Civil Procedure before filing the motion. (Docket # 46 at ¶ 3). I agree with defendants that plaintiff's motion is procedurally deficient because it is not accompanied by the required certification that he "in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." *See* FED. R. CIV. P. 37(a)(1).

Moreover, defendants' papers reveal that one of the two hearing tapes plaintiff requests has been turned over to the facility so that plaintiff may review it; the other one requested cannot be located. (Docket # 46 at ¶¶ 11-13). Many of the requests as drafted are too vague to understand what they seek (*see* Docket # 44 at ¶¶ 3-6), such as plaintiff's request for "VHS video cassettes from arch gates cameras s[o]uth and main yard gates" without reference to identifying dates or incidents (*see id.* at ¶ 3). The relevance of many, if not all, of the requests to the single claim remaining before the Court – the Eighth Amendment conditions of confinement claim – is not obvious. With further conferral, the relevance may become apparent. On this record, plaintiff's motion to compel is denied without prejudice to renewal following a good faith conferral between the parties concerning plaintiff's requests and defendants' objections in accordance with Rule 37(a)(1).

## CONCLUSION

Accordingly, defendants' motion to transfer this matter to the Northern District of New York **(Docket # 38)** is **DENIED**. Plaintiff's motion for appointment of counsel **(Docket # 40)** and motion to compel **(Docket # 44)** are **DENIED** without prejudice to renewal. In addition, this Court recommends that the District Court deny defendants' motion to amend their answers (Docket # 38).

**IT IS SO ORDERED.**

                                                     *s/Marian W. Payson*
                                                     MARIAN W. PAYSON
                                                   United States Magistrate Judge

Dated: Rochester, New York
        July 18, 2018

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b), 6(a) and 6(d) and Local Rule 72(b).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See e.g. Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b), or with the similar provisions of Rule 72(a) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**IT IS SO ORDERED.**

                                        *s/Marian W. Payson*
                                        MARIAN W. PAYSON
                                  United States Magistrate Judge

Dated: Rochester, New York
        July 18, 2018