UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BERNABE ENCARNACION,

                                        Plaintiff,

-vs-

GLENN GOORD, Commissioner of
DOCCS, MICHAEL P. McGINNIS,
Superintendent of Southport Correctional
Facility, DAVID ROCK, Superintendent of
Great Meadow Correctional Facility, and
DONALD SELSKY, Direction of Special
Housing Unit,

                                        Defendants.

_____

DECISION AND ORDER

12-CV-6180 CJS

INTRODUCTION

        In this action, Plaintiff, a prison inmate, asserts an Eighth Amendment "conditions

of confinement" claim under 42 U.S.C. § 1983 ("Section 1983") relating to a period of

almost eleven years that he spent confined in the Special Housing Unit ("SHU").  Now

before the Court is Defendants' motion for summary judgment (ECF No. 87).  The

application is granted and this action is dismissed.

BACKGROUND

        The reader is presumed to be familiar with the record on summary judgment.  The

Court will summarize the facts relevant to Defendants' summary judgment motion.

Unless otherwise noted, the facts are undisputed and viewed in the light most-favorable

to Plaintiff.

An August 10, 1996, while Plaintiff was incarcerated at Auburn Correctional Facility ("Auburn"),[1] he was involved in a fight with another inmate, immediately after which the other inmate died from stab wounds.[2]  As a result, on or about February 17, 1998, Plaintiff was convicted in Cayuga County Court of Murder in the Second Degree in violation of New York Penal Law § 125.25 and Promoting Prison Contraband in the First Degree, in violation of Penal Law § 205.25[2].

Plaintiff was subsequently charged with two counts of violating 7 New York Code Rules and Regulations ("NYCRR") § 270.2, DOCS Standards of Inmate Behavior Rule 1.00, "Penal Law Offense," based upon his criminal convictions for murder and promoting prison contraband.  Following a Tier III disciplinary hearing, Plaintiff was found guilty and sentenced to, *inter alia*, 10 years in the SHU.  That 10-year SHU sentence began on February 17, 1998 and ended on February 17, 2008.[3]

On or about February 13, 1998, at approximately the same time that Plaintiff received his 10-year SHU sentence, he committed another disciplinary infraction that resulted in him receiving additional time in SHU.  Specifically, during closing arguments

---

[1] The website of the New York State Department of Corrections and Community Supervision ("DOCCS"),and Plaintiff's inmate number, DIN 91-B-0943, indicate that he has been in DOCCS' custody since 1991.

[2] In his submissions in this action, Plaintiff maintains that he was wrongfully convicted of both the penal law violations and the prison disciplinary charge arising from his convictions.  Plaintiff spends a great deal of time attempting to re-litigate the circumstances of the inmate's death, such as by arguing that the deceased inmate had no internal injuries and likely died from choking on a packet of marijuana, *see, e.g.*, ECF No. 78 at pp. 2–3, or by claiming that Plaintiff's rights were violated at the prison disciplinary hearing. However, the actual record indicates that the deceased inmate had multiple stab wounds, one of which penetrated his aorta.  More importantly, the circumstances of Plaintiff's criminal law convictions and the related disciplinary hearing that resulted in his 10-year SHU sentence are not part of this action. The only issue in this action is whether Plaintiff suffered an Eighth Amendment violation during his time in SHU. *See, e.g.*,  Report & Recommendation, ECF No. 60 at p. 8 ("[T]he Court is mindful that plaintiff's remaining claim relates to the length and conditions of his SHU confinement and not to any alleged illegalities relating to his 1998 disciplinary hearing at Elmira.3 Specifically, as construed by the Second Circuit, plaintiff's amended complaint asserts that "his Eighth Amendment rights were violated when he was confined in [SHU] for more than 11 years, and denied hygiene products and food."").

[3] *See, e.g.*, ECF No. 36-1 at p. 29.

at his murder trial, Plaintiff assaulted his defense attorney with a chair.  Plaintiff was issued a misbehavior report for violent conduct, found guilty, and sentenced to an additional 180 days in the SHU, which was served between February 17, 2008 and August 15, 2008.[4]

Subsequently, in 2003, while Plaintiff was serving the first of his SHU sentences, he committed another disciplinary infraction for which he received still additional time in SHU.  Specifically, on May 1, 2003, Plaintiff was issued a misbehavior report charging him with "money/unauthorized property," "smuggling" and "facility correspondence violation."[5]  On May 14, 2003, Plaintiff was found guilty of those infractions and sentenced to an additional six months in SHU, to be served between August 15, 2008 and February 15, 2009.[6]

Thereafter, while still in SHU, Plaintiff was convicted of committing additional disciplinary infractions.  However, those convictions resulted in Plaintiff receiving sentences of "keeplock," not SHU.  Regarding the difference between keeplock and SHU, the Second Circuit has noted that the former typically involves an inmate being locked into his usual cell in general population, while the latter involves solitary confinement in a separate SHU-designated section of a facility.  *See, e.g., H'Sh aka v. O'Gorman*, 758 F. App'x 196, 197 (2d Cir. 2019) ("Several violations led to disciplinary confinement alone in his cell ("keeplock") or alone in the prison's special housing unit ("SHU").").  Another court

---

[4] ECF No. 36-1 at pp. 31–37.  The disciplinary records contain multiple references to the fact that Plaintiff has the demonstrated ability to speak and understand English, but that he sometimes claims otherwise.  However, the Court makes no finding as to Plaintiff's ability to speak English, as it is not relevant to the Court's ruling.

[5] ECF No. 36-1 at p. 49.  The incident involved Plaintiff's attempt to mail a $20 bill out of the facility. *See, id.* at pp.57–61.  The infraction was discovered when a letter enclosing the money, evidently written and signed by Plaintiff, was returned to the facility by the postal service due to the lack of a complete address.

[6] ECF No. 36-1 at p. 49.

has described the difference between the two forms of disciplinary confinement as follows:

> Keeplock is a form of confinement restricting an inmate to his or her cell, separating the inmate from others, and depriving him or her of participation in normal prison activities. Inmate conditions while keeplocked are substantially the same as in the general population. While on keeplock confinement an inmate is confined to his or her general population cell for twenty-three hours a day, with one hour for exercise. Keeplocked inmates can leave their cells for showers, visits, medical exams, and counseling, and can have cell study, books, and periodicals.  The primary difference between keeplock and the general population confinement conditions is that keeplocked inmates do not leave their cells for out-of-cell programs, and are usually allowed less time out of their cells on the weekends. Keeplock is a less severe penalty than SHU; for example keeplocked inmates have access to their personal property, while SHU inmates do not.  In addition, keeplocked inmates are afforded more liberal visitation rights.

*Crump v. Ekpe*, No. 9:07-CV-1331 LEK DEP, 2010 WL 502762, at *2, n. 4 (N.D.N.Y. Feb. 8, 2010) (citations omitted).  Although, in some cases a keeplock sentence may be served in SHU. *See, Smith v. Taylor*, 149 F. App'x 12, 13 (2d Cir. 2005) ("Although defendants urge that Smith's sentence was to keeplock and not to the SHU, he apparently served his keeplock sentence in the SHU.").

As to his first keeplock sentence, it resulted from a misbehavior report issued on or about September 5, 2003, for refusing a direct order.[7]  On September 18, 2003, Plaintiff was found guilty of that infraction and sentenced to 30 days in keeplock, to be served between February 15, 2009 and March 17, 2009.[8]

---

[7] Plaintiff had consented in advance to attend a medical appointment outside of the facility, but on the day of the appointment he refused to leave his cell and refused direct orders to come out and attend the medical appointment, even after being warned that he would receive a misbehavior report if he failed to attend the appointment.

[8] ECF No. 36-1 at p. 73.

Then, on or about November 1, 2003, Plaintiff was issued a misbehavior report charging him with "interfering with an employee," "refusing a direct order" and "refusing a search or frisk."  On November 7, 2003, Plaintiff was found guilty of those infractions and sentenced to 30 days in keeplock, to be served between March 17, 2009 and April 16, 2009.[9]

On or about October 20, 2004, Plaintiff was charged with refusing a direct order. On November 1, 2004, Plaintiff was found guilty and sentenced to an additional 20 days in keeplock, to be served between April 16, 2009 and May 6, 2009.[10]

On June 21, 2005, Plaintiff was charged with making false statements and refusing a direct order.  On July 1, 2005, Plaintiff was found guilty and sentenced to 30 days in keeplock, with 15 days suspended, to be served between November 3, 2009 and November 18, 2009.[11]

On March 28, 2006, Plaintiff was charged with "bribery or extortion," "interference with employee" and "refusing direct order."  On March 31, 2006, Plaintiff was found not guilty of bribery or extortion, but guilty of the other two offenses, and was sentenced to 21 days in keeplock, to be served between November 18, 2009 and December 9, 2009.[12]

Regarding the locations where these disciplinary infractions were committed, the first disciplinary infraction (murder, promoting contraband), for which Plaintiff received a ten-year SHU sentence, was committed while Plaintiff was at Auburn.  The second infraction (striking defense attorney with a chair), for which Plaintiff received an additional six months in SHU, was committed while Plaintiff was housed at Elmira Correctional

---

[9] ECF No. 36-1 at p. 88–91.
[10] ECF No. 36-1 at p. 98.
[11] ECF No. 36-1 at p. 106.
[12] ECF No. 36-1 at p. 115.

Facility ("Elmira"). The third infraction (smuggling), for which Plaintiff received an additional six months in SHU, was committed while Plaintiff was at Southport Correctional Facility ("Southport"). The remaining convictions, for which Plaintiff received varying sentences in keeplock, were also committed while Plaintiff was at Southport.

Plaintiff actually served his 10-year SHU sentence between February 17, 1998 and February 17, 2008.[13] Plaintiff maintains that he served part of that sentence at Elmira, between February 17, 1998 an September 1999,[14] and the remainder of that sentence at Southport, between September 1999 and February 17, 2008.[15] Plaintiff served the 180-day SHU sentence for violent conduct (assaulting his attorney) at Southport between February 17, 2008 and August 15, 2008.[16] As mentioned earlier, Plaintiff was supposed to serve another six-month SHU sentence, for smuggling, between August 15, 2008 and February 15, 2009. However, for reasons that are unclear in the record (evidently Plaintiff received a "time cut"), Plaintiff actually only served three (3) months in SHU for that conviction, at Southport, between August 15, 2008 and November 15, 2008.[17] Consequently, the last of Plaintiff's SHU sentences ended on or about November 15, 2008.

Thereafter, Plaintiff served a series of keeplock sentences, between November 15, 2008 and March 11, 2009.[18] However, Plaintiff served those keeplock sentences at Great Meadow Correctional Facility ("Great Meadow"), not Southport. In that regard, records

---

[13] ECF No. 38-1 at p. 52.
[14] Elsewhere, Plaintiff states that he spent 17 months in SHU at Elmira. ECF No. 78 at p. 12 (Plaintiff stated that he spent "17 months in Elmira SHU."). However, the period between February 1998 and September 1999 is nineteen months, not seventeen months. DOCCS records indicate that Plaintiff was transferred from Elmira to Southport on October 1, 1999. ECF 38-1 at p. 25.
[15] ECF No. 78 at p. 6.
[16] ECF No. 38-1 at p. 53.
[17] ECF No. 38-1 at p. 51.
[18] ECF No. 38-1 at p. 52.

indicate that Plaintiff was transferred from Southport to Great Meadow on November 17, 2008, two days after he finished his SHU sentences.[19]  After March 11, 2009, Plaintiff did not serve any further punitive sentences in keeplock or SHU until November 30, 2012, when he began serving a new 6-month SHU sentence at Great Meadow for a new infraction committed while he was at Great Meadow.[20]

On March 13, 2012, Plaintiff, proceeding *pro se*, filed a Complaint and an application to proceed *in forma pauperis*.  However, "[u]nder the prison mailbox rule, a *pro se* prisoner's complaint is deemed filed upon its delivery to prison authorities for transmittal to the district court." *Sides v. Paolano*, 782 F. App'x 49, 50 (2d Cir. 2019) (citation omitted).  Here, both the Complaint and the application to proceed *in forma pauperis* are signed and dated on March 8, 2012, and it appears that was the date that Plaintiff delivered his papers to prison authorities for mailing.  Accordingly, the Court will deem this action to have been commenced on March 8, 2012.

Plaintiff filed the action in the U.S. District Court for the Southern District of New York, which transferred the action to this Court.

On August 28, 2012, this Court (Larimer, J.) granted Plaintiff's motion to proceed *in forma pauperis* and dismissed the action, pursuant to 28 U.S.C. § § 1915(e)(2)(B) and 1915(A), finding that it was duplicative of an earlier action that he had filed in this Court asserting a "double jeopardy" claim relating to the disciplinary charges that resulted in his ten-year SHU sentence. *See*, Decision and Order, ECF No. 8 (dismissing action with prejudice as duplicative of action *Encarnacion v. McGinnis*, 02-CV-6380 CJS, dismissed

---

[19] ECF No. 38-1 at p. 28.  Plaintiff acknowledges that he was transferred to Great Meadow in November 2008. *See*, ECF No. 78 at p. 12 ("Defendants transferred me to Great Meadow C.F. SHU in November 2008.").
[20] ECF No. 38-1 at p. 52.

at 2005 WL 3018728 (W.D.N.Y. Oct. 26, 2005)).

Plaintiff appealed the dismissal, and on September 23, 2014, the United States Court of Appeals for the Second Circuit ("the Second Circuit") dismissed the appeal, finding that this Court's order dismissing Plaintiff's action was non-final, since this Court had "overlook[ed] claims contained in the complaint."  Specifically, the Second Circuit's order stated:

> The district court decision and order is silent as to Encarnacion's allegations that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment. There is no apparent explanation for the district's court's silence, and its ruling on Encarnacion's double jeopardy claim is unrelated to his Eighth Amendment claim. If the district court intended to dismiss the Eighth Amendment claims as well, then it may clarify its reasons for dismissal, and re-enter final judgment. Otherwise, the Eighth Amendment claim will likely proceed to final adjudication. Either of those scenarios would establish a jurisdictional basis for a subsequent appeal.

Second Circuit Mandate, ECF No. 12.   Consequently, the matter was remanded to this Court for clarification of its dismissal order and consideration of an Eighth Amendment "cruel and unusual punishment claim."

On November 10, 2014, this Court (Larimer, J.) issued an Order (ECF No. 13) finding that the Complaint's allegations concerning a SHU-related 8th Amendment claim were conclusory and failed to state an actionable claim.  However, the Order gave Plaintiff an opportunity to file an amended pleading "that addresses only an Eighth Amendment claim."  The Order also dismissed the official capacity claims against the Defendants, with prejudice, and instructed Plaintiff that any amended pleading would need to plausibly state grounds for pursuing claims against the Defendants in their individual capacities. The Order advised Plaintiff that any amended pleading would completely replace the

original Complaint.

On January 26, 2015, Plaintiff filed an Amended Complaint, ECF No. 16 consisting of a 7-page form complaint and an attached 65-page Complaint. (This pleading remains the operative pleading in this action.) When asked, as part of the form complaint, to explain the nature of his claim, Plaintiff stated:

> Confined me twice in SHU 23 to 24 hours a day in solitary confinement daily for over of 11- years [sic] arose from the same underlying 8/10/96 incident[21] illegally violated 8th and 14th Amendments U.S.C.A. Constitution.

ECF No. 16 at p. 5. With regard to supposedly having been confined "twice," the pleading asserts that Plaintiff had two distinct periods of confinement in the SHU: "8/10/96 thru 1/8/97" and "2/17/98 thru 3/11/09," all for "the same underlying 8/10/96 incident."[22] The Court observes, however, that both of those assertions have been clearly refuted by the record, including by documents that Plaintiff submitted himself. That is, the period of 8/10/96 through 1/8/97 to which the pleading refers was not actually an SHU disciplinary sentence, but rather, was a period in which Plaintiff was kept in administrative segregation while an investigation into the deceased inmate's death was being conducted.[23] Moreover, the pleading does not appear to identify any particular constitutional violation that occurred during that period of administration segregation in any event. Additionally, the pleading was incorrect to assert that Plaintiff's entire time in SHU was related to "the same underlying 8/10/96 incident" since, as already discussed, the total period of time that Plaintiff spent in SHU was a combination of three separate disciplinary sentences

---

[21] Presumably, Plaintiff asserted that his entire alleged 11-year SHU stay resulted from the same incident because he was aware even then that he faced a statute-of-limitations problem. As will be discussed further below, however, Plaintiff's time in SHU did not all arise from the same incident.

[22] *See also, id.* at p. 16 (stating that Plaintiff's SHU confinement lasted "eleven (11) consecutive years from 2/17/98 thru 3/11/09").

[23] *See,* Amended Complaint, ECF No. 16 at pp. 33, 36–38, 42–43.

arising from unrelated incidents.   Moreover, the period between November 2008 and March 2009 was designated as keeplock, not SHU.

In any event, the pleading further asserts that Plaintiff spent "4042 consecutive days," more than eleven years, in SHU confinement *at Southport*:

> Defendants placed Encarnacion in extreme isolation as punishment for more than 4042 consecutive days of SHU solitary confined at SCF [Southport Correctional Facility] SHU well known as the wors[t] SHU facility in New York State and number 3 in the nation.[24]

However, that assertion is also factually incorrect, since as already mentioned, Plaintiff's SHU time was divided between Elmira and Southport.   In particular, Plaintiff spent approximately nineteen months in Elmira's SHU, and approximately nine years and two months at Southport.

Putting aside these discrepancies, the Amended Complaint alleges that Plaintiff suffered cruel and unusual punishment while in SHU.   For example, the pleading states that Plaintiff's time in SHU, during which he was locked into his cell for 23 hours per day, resulted in "serious physical injuries – blindness, pains and walking problems."   The pleading attributes these problems to "isolation and limitation of physical movement."   The pleading further states that Plaintiff's time in SHU "traumatized" him psychologically, resulting in bad dreams.   The pleading also states that during Plaintiff's time in SHU, he experienced "further restrictions and deprivation of personal properties and body care items for personal hygiene, and [letters and photos from family and friends and daily meals."[25]

---

[24] Am. Compl., ECF No. 16, at ¶ 26.

[25] The pleading did not explain the circumstances under which Plaintiff allegedly suffered these "deprivations."   However, in a later submission Plaintiff explained that he was referring to instances in which he was deprived of certain items due to punitive sanctions imposed for infractions he committed while he was in SHU. *See*, ECF No. 78.

The Amended Complaint asserts that defendant Glenn Goord ("Goord"), the former Commissioner of DOCCS, was personally involved in the alleged constitutional violation since he was DOCCS Commissioner during the relevant time and therefore had responsibility for the "overall administration" of DOCCS including the review of disciplinary appeals. The Amended Complaint further asserts that Goord "reviewed and affirmed" Plaintiff's 10-year SHU sentence. The Amended Complaint asserted that defendant Donald Selsky ("Selsky"), the former director of DOCCS SHU Program, was personally involved in the alleged constitutional violation since he was the director of DOCCS SHU program during the relevant time and therefore was responsible for the "overall daily administration of SHU."  The Amended Complaint also asserts that Selsky "re-viewed" and "re-affirmed" Plaintiff's 10-year SHU sentence.  The Amended Complaint alleges that defendant Michael McGinnis ("McGinnis"), the former Superintendent at Southport, was personally involved in the alleged constitutional violation since he had been the Superintendent at Southport Correctional Facility during the relevant time and had been "charged with overall supervision and administration of Southport," including the continuation of Plaintiff's confinement in SHU.  The pleading further asserts that Goord, Selsky and McGinnis have personal involvement in the alleged constitutional violation since Plaintiff spoke to each of them, at various unspecified "multiple times" while they were making "rounds" of the facility, and asked them to release him from SHU.[26]

---

[26] The Amended Complaint asserts that on unspecified occasions during his SHU confinement, Plaintiff, using a Spanish-English inmate interpreter, spoke directly to Goord, Selsky and McGinnis and "verbally asked to be released" from SHU.  According to the Amended Complaint, Goord, Selsky and McGinnis all responded identically by stating, "You will be released from the SHU when you [have] completed your SHU time."

The Amended Complaint asserts that defendant David Rock ("Rock") was personally involved in the alleged constitutional violation since he had been the Superintendent at Great Meadow at the relevant time and had been responsible for the "overall supervision and administration of" Great Meadow.

The Amended Complaint contends that Plaintiff exhausted his administrative remedies before commencing this action, as required by 42 U.S.C. § 1997e(a).  In that regard, the pleading contends that on "January [17], 2009," Plaintiff filed an inmate grievance "challenging the violation of his Eighth and Fourteenth rights" [sic], but that such grievance was "never decided, either granted or denied."  The pleading asserts that subsequently, on September 4, 2009, Plaintiff filed another inmate grievance, challenging the failure to decide his earlier grievance.  The Amended Complaint states that the second grievance was denied, and that Plaintiff appealed that denial to the Central Office Review Committee.

Purportedly, as evidence that Plaintiff exhausted his administrative remedies in the manner just described, the pleading refers to "Exhibits E and F" to the Amended Complaint.  However, Exhibit E to the Amended Complaint is not an inmate grievance at all, let alone an inmate grievance concerning the conditions of confinement in SHU.  Rather, Exhibit E is an appeal, dated March 9, 1998, from the Tier III disciplinary hearing determination that resulted in Plaintiff's 10-year SHU sentence.  The appeal argued that Plaintiff's due process rights were violated at that hearing, but that issue is not part of this action.  Indeed, Plaintiff has fully but unsuccessfully litigated any issues related to that disciplinary hearing in other proceedings.

Exhibit F to the Amended Complaint is a series of documents relating to an inmate grievance, but not a grievance complaining about the conditions of confinement in SHU. Rather, the documents relate to an inmate grievance that Plaintiff filed in which he claimed to be owed "back wages" lost during his time in SHU.   More specifically, the exhibit indicates that on January 17, 2009, after Plaintiff had been transferred from Southport to Great Meadow, he filed an Inmate Claim Form, not a grievance form, stating:

> On 2-17-98, I was placed in Special Housing Unit (SHU) illegally and the lost [loss] of wages in the amounts of $5,148.00 for the eleven (11) [years] or 468 weeks of lost wages of $450 per week or more as I was a Grade #5 at the time of I was placed in SHU illegally after been issued two misbehavior reports for the same incident of 8-10-96 at the Auburn Corr. Fac.  On 8-10-96 at Auburn C.F. I was involved in a fist fight with another inmate Daniel Roberts.   On 8-11-96 I was served with valid misbehavior report dated 8-10-96 charged with prison rules: 100,13- fighting, 100.10 – assault on inmate, 113.10- contraband weapon.   It was dismissed at the start of the disciplinary hearing.   On 2-18-98 I was served with a second misbehavior [report] for the same 8-10-96 incident and placed in SHU for 10 years in violation of the 5 Ct.App.Div Laws in *Howard v. Coughlin*, 212 A.D.2d 352, 622 N.Y.S.2d 134 (1995).  I also claim $589,9200 [sic] equally $150.00 for each days (3928) of mental and physical pain. See attached Exhbit # 1, 2-3 . [Those exhibits are the misbehavior reports and hearing disposition form relating to Plaintiff's 10-year SHU sentence]  $5148.00 for lost of wages 11 years, 468 weeks grade 5 wages. $589,9,200.002 [sic] 150 per days 3928 for mental and physical pain + distress for the illegal SHU for 11 years.[27]

On January 31, 2009, Corrections Captain E. Carpenter denied the claim, stating: "This is not a lost property claim.  Misbehavior reports indicate your admission to SHU.  Loss of Grade 5 program when you were in SHU."  On April 28, 2010, the Central Office Review Committee ("CORC") affirmed the denial, stating in pertinent part:

---

[27] ECF No. 16 at p. 61.

> [T]he grievant was found guilty of the 8/10/96 incident at his Tier III hearing on 2/25/98. Disciplinary sanctions were imposed, which included confinement to SHU beginning 2/17/98, the date the grievant was convicted at a jury trial. His subsequent appeal was affirmed on 5/5/98. With respect to the grievant's appeal, CORC asserts that the grievant is not entitled to back pay dating back to 2/17/98.

ECF No. 16 at p. 60.[28]

As will be discussed further below, the claim/grievance just discussed is significant to the Court since it indicates that as of the date it was written, January 17, 2009, the "11 year SHU sentence" to which Plaintiff referred therein, and to which he repeatedly refers in this action, had already ended. In that regard, when Plaintiff wrote the claim/grievance, he was at Great Meadow, serving a keeplock sentence, after having completed his SHU sentence at Southport, and was demanding compensation for what he claimed to be an already-completed 11-year period of SHU confinement.

In any event, returning to the procedural history of this action, on August 20, 2015, this Court (Larimer, J.) issued a Decision and Order (ECF No. 18) dismissing the Amended Complaint with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915(A). The Decision and Order indicated that the allegations in the Amended Complaint were too vague and conclusory to state actionable 8th Amendment claims.

Plaintiff again appealed, and on October 7, 2016, the Second Circuit vacated the dismissal in part and remanded the action back to this Court. The Second Circuit affirmed the dismissal with regard to Plaintiff's so-called "double jeopardy" claim relating to the Tier III disciplinary hearing that resulted in his 10-year SHU sentence.[29] However, the Circuit

---

[28] Plaintiff's contention that his grievance was never decided is refuted by the exhibits he cites.

[29] This ruling by the Second Circuit has not stopped Plaintiff from subsequently attempting to re-argue, at every opportunity in this action, the so called double jeopardy claim.

Court vacated the dismissal of the 8th Amendment claim, characterizing it as a claim that Plaintiff was "denied hygiene products and food."  That characterization was evidently based on a paragraph 27 of the Amended Complaint, in which Plaintiff vaguely stated:

> 27. His original 10-year SHU sentence has been extended as well as further restrictions and deprivation of personal properties and body care items for personal hygiene, and family's and friends' letters and photos and daily meals.[30]

Nevertheless, the Circuit Panel held:

> Upon review, we conclude that the district erred in dismissing Encarnacion's amended complaint *sua sponte* because it did not consider the overall conditions of confinement of his SHU sentence. In particular, the District Court failed to consider the relevance of Encarnacion's 11-year confinement in SHU. Moreover, Encarnacion alleged that he was deprived of hygiene products and "daily meals" while in SHU. The district court also should have considered those allegations as part of the overall conditions of his SHU confinement. *See Walker v. Schult*, 717 F.3d 119, 127 (2d Cir. 2013) ("[T]he failure to provide prisoners with toiletries and other hygienic materials may rise to the level of a constitutional violation."); *Robles v. Coughlin*, 725 F.2d 12, 16 (2d Cir. 1983) ("[U]nder certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension."). Finally, we cannot "discern from the district court's analysis whether it adequately considered the possibility that [the alleged violation] offends contemporary standards of decency." *Harris v. Miller*, 818 F.3d 49, 65 (2d Cir. 2016).

Mandate, ECF No. 22.

Upon remand, this Court permitted the action to go forward and directed service on Defendants. Subsequently, Defendants appeared and answered, and the parties conducted discovery.

---

[30] As will be discussed further below, Plaintiff later acknowledged in this action that these "deprivations" were disciplinary sanctions imposed on him for infractions that he committed while in SHU.

On February 26, 2018, Plaintiff submitted papers (ECF No. 42) in opposition to Defendants' motion to transfer venue to the Northern District of New York.  The Court mentions this because in Plaintiff's opposition to that motion he asserted that the "11 year SHU sentence" about which he is complaining had been served at Elmira and Southport, in the Western District of New York, and not a Great Meadow, located in the Northern District of New York:

> [T]his matter is proper[ly] venued in the Western District because Southport Correctional Facility ("Southport") is where the constitutional rights were violated and by DOCCS employees at the Southport Corr. Fac.
>
> \*\*\*
>
> Furthermore, Elmira Correctional Facility ("Elmira") was the place where the sanctions [were] made in 1998, and Southport was the place where Plaintiff has been confined 23-24 hours a day daily in solitary for more than 11 straight consecutive years[.]

ECF No. 42 at p. 3.  Later, in that same document, Plaintiff reiterated that any constitutional violations had occurred at either Elmira or Southport.  Plaintiff did not assert that any constitutional violation had occurred at Great Meadow.

On August 24, 2018, Defendants deposed Plaintiff.[31]  When Plaintiff was asked about the "deprivations" that he mentioned in the Amended Complaint, he stated that he was referring to disciplinary sanctions that were imposed on him at various times while he was in SHU:

> Many times food, how many times *they would give me a ticket and they would move me to level one.*  They wouldn't give me food for three days. They wouldn't let me bathe.  They wouldn't let me go out into the yard.  Not being able to bathe or use the bathroom . . . .  A ton of things more.  I explained all of these things to you, in an affidavit.

---

[31] ECF No. 88 at p. 23.

ECF No. 88 at p. 29.  (emphasis added) (The affidavit to which Plaintiff refers is evidently ECF No. 78, which the Court will discuss further below.)  Plaintiff also indicated that he was deprived of personal hygiene items such as toothpaste, soap and clean clothing. When asked when those incidents had occurred, Plaintiff stated that it was whenever he received a disciplinary "ticket" and was moved to "Level One."[32]  Plaintiff also stated that when he was deprived of meals, it was pursuant to a restricted diet order issued following a hearing, though he could not recall any specific occasion when he was deprived of meals.[33] Plaintiff also could not recall how many times he was allegedly denied meals.[34] The reasonable inference from Plaintiff's statements is that on the occasions he suffered the alleged "deprivations," they were the result of "deprivation orders" and "restricted diet orders." *See, generally, Trammell v. Keane*, 338 F.3d 155 (2d Cir. 2003).  Notably, Plaintiff testified that these "deprivations" occurred at Southport and Elmira: "Q. Now, which facilities were you housed at, when you were deprived of the items for personal hygiene? A. Elmira and Southport."[35]

At his deposition (and contrary to what he stated in the Amended Complaint), Plaintiff asserted that he had filed "very many" inmate grievances concerning the matters

---

[32] ECF No. 88 at pp. 30–31 ("[F]or every ticket they gave me, they would take me down to Level One and it was the same routine there, every time.").  Plaintiff is referring to the Progressive Inmate Movement System ("PIMS"). *See, Ruggiero v. Fischer*, No. 15-CV-00962-RJA-JJM, 2018 WL 7892966, at *1 (W.D.N.Y. Sept. 27, 2018) ("Southport employs a Progressive Inmate Movement System ("PIMS"). The PIMS system utilizes a three-level scheme designed to afford Southport inmates the opportunity to achieve increasing privileges as they move from Level I to Level III.  Under the PIMS system, an inmate is designated as Level I for 30 days upon arrival to the facility.  All Level I inmates are required to remain restrained (handcuffed in front with waist chain) while in the recreation area. *Id.*, ¶ 10. Inmates are moved to Level II if they complete 30 days without a disciplinary report. Inmates who "fail to maintain positive adjustment" on Level II or Level III may be returned to Level I."), report and recommendation adopted sub nom. *Ruggiero v. Fisher*, No. 15-CV-962-A, 2019 WL 1438810 (W.D.N.Y. Apr. 1, 2019), *aff'd sub nom. Ruggiero v. Fischer*, 807 F. App'x 70 (2d Cir. 2020).
[33] ECF No. 88 at p. 32.
[34] ECF No. 88 at p. 32.
[35] ECF No. 88 at p. 31; *see also, id.* at p. 32–33.

involved in this lawsuit,[36] though he could not say how many[37] and had no copies of any grievance, and could not say anything specific about what the grievances supposedly stated: "Q. Mr. Encarnacion, these answers are extremely vague.  Do you – do you have a memory of what you grieved?  A. No." (ECF No. 88 at p. 47).   When Plaintiff was asked if any of the alleged grievances involved the "deprivations" that he mentioned in the Amended Complaint, he responded, "It's possible," though he admitted he could not "remember grieving any specific deprivations."[38]   He also admitted that he could not remember filing a grievance concerning "the length of [his] SHU time."[39]

Plaintiff, who claims to be unable to speak English (despite numerous notations in the record by DOCCS staff indicating that he can), testified at the deposition in a manner suggesting that on multiple occasions during his time in SHU he had discussed the conditions of his confinement with defendants Goord and Selsky, via an interpreter, when they made rounds of the SHU.[40]   However, under further questioning, Plaintiff admitted that he could not remember the particulars of any such conversations.[41]  Plaintiff stated that he believed he did complain to Goord about the length of his SHU sentence, since he recalled asking Goord to allow him to return to general population.[42]   Similarly,  Plaintiff testified that he spoke directly with McGinnis and Rock several times, but he could not provide a physical description of either defendant, nor could he remember saying any

---

[36] ECF No. 88 at p. 46.

[37] ECF No. 88 at p. 48.

[38] ECF No. 88 at p. 48.

[39] ECF No. 88 at p. 48.

[40] *See*, ECF No. 87-3 at pp. 17–19 (Plaintiff described his conversations with Goord by stating: "I explained my situation and asked if he would let me leave the box.").

[41] ECF No. 87-3 at pp. 20–21 ("Q. Did you tell him [Goord] about any deprivations when you spoke with him, or no?  A. I don't remember exactly what we spoke about.").

[42] ECF No. 87-3 at p. 21.

specific thing to them.[43]  Plaintiff also testified that he sent letters to the Defendants, but could not provide any specifics about those alleged communications.  Indeed, when questioned extensively about the number, contents, and dates of his alleged direct communications with Goord, Selsky, McGinnis and Rock, Plaintiff consistently responded, "I don't remember."

On January 18, 2019, Defendants filed subject motion for summary judgment (ECF No. 87).  At that time, Defendants gave the requisite *Irby* notice to the *pro se* Plaintiff that is required by Rule 56(b) of the Local Rules of Civil Procedure.

Primarily, Defendants contend that they are entitled to summary judgment because Plaintiff's claim is barred by Section 1983's 3-year statute of limitations: "Plaintiff filed this lawsuit in March 2012, more than three-years after leaving SHU, and, as a result, all of his claims are untimely. It is a global infirmity and the case must be dismissed." Alternatively, Defendants maintain that they are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies before commencing this action; because Plaintiff cannot demonstrate that Defendants were personally involved in the alleged violation; because Plaintiff cannot demonstrate that a constitutional violation occurred; and because Defendants would be entitled to qualified immunity.

In support of their statute-of-limitations argument, Defendants contend that Plaintiff was released from SHU "on August 16, 2008."  For the reasons discussed above, the Court believes that assertion is incorrect, and that Plaintiff was actually released from SHU three months later than that, in November 2008.  At least, that is when Plaintiff was transferred out of Southport which, as far as the Court is aware, is an all-SHU facility.

---

[43] ECF No. 88 at p. 45.

*See, e.g., Ruggiero v. Fischer*, 807 F. App'x 70, 73 (2d Cir. 2020)  ("Southport is an entirely SHU facility."). However, that discrepancy does not affect the legal force of Defendants' argument, since this action was still commenced more than three years after November 2008.

As for their contention that Plaintiff failed to exhaust administrative remedies, Defendants state:

> Plaintiff's testimony on his grievances is telling.  As was [a] pattern for Mr. Encarnacion, he cannot remember filing any specific grievance but testifies that he would always file grievances "right away." Though he cannot testify to and has no evidence of filed grievances on any of the allegations in this case, his best possible testimony is that "it's possible" he filed grievances pertaining to this case.  As detailed in Mr. Encarnacion's CORC report, there is no indication that he ever grieved any of these issues through the administrative processes available to him.  Although he provides a CORC report as an exhibit to his Complaint, that grievance concerns and is titled "Back Wages" and is unrelated to any allegation concerning this case. [Dkt. 16-1] at 41. Here, despite Plaintiff's claims of appeal – without a final determination from CORC – the court should find that Plaintiff failed to exhaust his administrative remedies.

Defs.' Mem. of Law, ECF No. 87-1 at p. 16.  In support of this argument, Defendants have submitted an affidavit from Rachael Sequin ("Sequin"), Assistant Director of DOCC's Inmate Grievance Program and custodian of the records of CORC, stating in pertinent part that according to CORC's records, Plaintiff "never appealed any grievance to CORC relating to his SHU confinement sentence or conditions" relating to the period encompassed by this action.[44]

Regarding their contention that Plaintiff cannot show that any of the four defendants was personally involved in the alleged constitutional violation, Defendants

---

[44] ECF No. 87-8 at p. 3.

point out that Plaintiff offers only seemingly implausible assertions that, on some unspecified occasions during his years in SHU, he personally spoke, through unspecified interpreters, to Goord, Selsky and McGinnis as they were making "rounds" at Southport. Goord, Selsky and McGinnis, meanwhile, contend that they cannot ever recall speaking to Plaintiff, and that it would have been unusual, and therefore memorable, for an SHU inmate to have spoken to them using an interpreter, as Plaintiff claims happened. In any event, Defendants point out that Plaintiff cannot recall exactly what he might have said to Goord, Selsky or McGinnis on these occasions.[45] *See, e.g.*, Defs.' Mem. of Law, ECF No. 87-1 at p. 9 ("Plaintiff testifies that he spoke with Commissioner Goord when he did rounds but that he doesn't remember talking to him about the alleged "deprivations." . . . Plaintiff is unable to recall anything specific about these conversations."); *id.* ("Plaintiff, again, fails to be able to recall any specifics of any conversation with Defendant Selsky. Although Plaintiff claims to have written to Director Selsky, he cannot recall anything about those written communications."); *id* . at p. 10 ("As to Superintendent McGinnis, Plaintiff testifies that he cannot remember the number of conversations he had, the content of those conversations, anything that he said to McGinnis or anything that McGinnis said to him or McGinnis' physical appearance. Plaintiff again testifies to alleged written communication to McGinnis[, but] recalls nothing of the alleged letters or Complaints.").

Defendants likewise point out that Plaintiff cannot recall the content of any communications that he might have had with defendant Rock at Great Meadow and, in any event, as noted earlier, Plaintiff stated in opposition to Defendants' motion to transfer venue that the constitutional violations about which he is complaining in this action

---

[45] *See*, ECF No. 88 at p. 38 (Plaintiff had "very short" conversations with Goord and cannot remember what they spoke about).

occurred at Elmira and Southport, not Great Meadow where Rock was the Superintendent. *See*, Defs.' Mem. of Law, ECF No. 87-1 at p. 10 ("Lastly, as to Superintendent Rock, and perhaps most tellingly, Plaintiff testifies that although he cannot recall any information now, he might recall it later. Similar to the testimony about all other Defendants, Plaintiff provides no specific information."). Defendants have submitted affidavits from Goord, Selsky, McGinnis and Rock indicating that they have no recollection of ever having personally received or reviewed any written correspondence from Plaintiff concerning the matters about which Plaintiff is complaining herein, and that there is no evidence that they did.

Regarding the merits of Plaintiff's 8th Amendment claim, Defendants contend that discovery has not provided any support for Plaintiff:

> In addition to the length of his SHU sentence, Plaintiff also claims deprivations of "daily meals" and hygiene products during his SHU sentence. Although Plaintiff is unable to identify any specific date on which any deprivation took place, all of the alleged deprivations occurred prior to his release from SHU[.]
>
> ***
>
> Long periods spent in isolation do not constitute cruel and unusual punishment. SHU confinement is a common punishment within state prisons, and the regular conditions of SHU confinement do not violate the Eighth Amendment. *Dixon v. Goord*, 224 F.Supp.2d 739, 748 (S.D.N.Y. 2002). Numerous cases in this circuit have upheld long SHU sentences that were challenged merely for the amount of time prisoners were held in segregation. *See e.g., Sostre v.McGinnis*, 442 F.2d 178, 193 (2d Cir. 1971); *Gulley v. Roach*, 2004 WL 2331922 (W.D.N.Y. Oct. 15, 2004) (duration of Plaintiff's confinement alone does not rise to the level of a constitutional violation). As a result, Plaintiff's Complaint fails to plead a claim of constitutional significance under the Eighth Amendment.
>
> ***
>
> Plaintiff's deposition also establishes that Plaintiff can bring forward no facts to assist his allegations of "deprivations" during his SHU confinement. Plaintiff cannot remember any specific instance in which he was deprived of anything but testifies to generalized deprivations pursuant to a "policy"

that was never communicated to him nor written down. Plaintiff fails to identify any of the officers allegedly involved and is unwilling to testify to any specifics as it relates to the number of times or dates on which these deprivations took place.

***

Plaintiff alleges certain deprivations but gives no specifics as to the nature of those deprivations, the effects of those deprivations, nor the dates/times/officers allegedly involved. Even assuming all of Plaintiff's vague allegations were true, Plaintiff cannot demonstrate that the actions he complains of were "sufficiently serious" to constitute cruel and unusual punishment and that defendants' actions amounted to "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Defs.' Mem. of Law, ECF No.87-1 at pp. 4–6.  Defendants further indicate that it is sometimes necessary to impose lengthy SHU sentences on inmates, such as Plaintiff, who commit serious crimes which already incarcerated, and that they are  unaware of any binding case authority indicating that that a ten- or eleven-year SHU sentence violates the 8th Amendment.

On February 27, 2019, Plaintiff filed a 223-page response[46] to the summary judgment motion. (ECF No. 89).  The Court observes that Plaintiff devotes a large amount of his submission to  arguing that he is innocent of the murder which resulted in his lengthy SHU sentence, even though that issue is not part of this action.  Plaintiff also attempts to re-argue his "double jeopardy" claim even though that claim was dismissed from this action long ago.  Plaintiff also devotes much argument to refuting Defendants' claim that he can speak English, though that issue is irrelevant to the resolution of this.

Next, Plaintiff contends that the Court should recuse itself  from this action, since the undersigned previously ruled against him in another action, *Encarnacion v McGinnis*,

---

[46] Plaintiff unnecessarily re-filed many pages of documents that were already filed as part of his earlier submissions or as part of Defendants' Summary Judgment Motion.

02-CV-6380, while supposedly lacking jurisdiction to do so, and dismissed his double jeopardy claim in this action.

With regard to Defendants' motion, Plaintiff contends that the Court should deny the application insofar as it is based on lack of personal involvement, since Plaintiff claims he sent letters to Defendants (even though he cannot say what was contained in those letters) and Defendants cannot definitively state that they never received them. Plaintiff also contends that Defendants should be deemed to have been personally involved since they held high positions of authority.

Plaintiff states that he exhausted unspecified grievances concerning his conditions of confinement while in SHU, and that insofar as CORC's records fail to reflect that fact it must be because CORC employees destroyed the records.

Plaintiff also states that when he was transferred to Great Meadow, defendant Rock ordered that he be placed in Great Meadow's SHU from "11/18/08 to 3/11/09" even though he had committed no disciplinary infraction, though that allegation is not contained in the Amended Complaint and there is no evidence of it in the record.

Plaintiff's response does not address Defendants' arguments concerning the statute of limitations, except indirectly, insofar as it maintains that Plaintiff remained in SHU, at Great Meadow, until March 11, 2009.

In addition to Plaintiff's opposition (ECF No. 89), the Court has also considered the sworn statement that he submitted in opposition to Defendants' earlier motion to dismiss. (*See*, ECF Nos 78, 89-2 at pp. 3–10). In that affidavit, Plaintiff states, *inter alia*, that his claim in this action is that he suffered constitutional violations during an "eleven year" period of confinement in SHU, related to an incident at Auburn Correctional Facility on

August 10, 1996, and that those eleven years were spent at Southport and Elmira. *See, e.g.,* ECF 89-2 at p. 7 ("Defendants illegally placed Plaintiff for a second time in SHU 23-24 hours a day of solitary confined daily for more than 11 years for one incident dated August 10, 1996 at Auburn."); *see also, id.* at p. 9 ("Plaintiff was in Elmira and Southport SHU for more than 11 years").   Plaintiff's affidavit also reiterates that the alleged unconstitutional "deprivations" occurred at Elmira and Southport, between "February 17, 1998 and November 18, 2008."[47]   The affidavit, signed in 2018, does not mention Great Meadow.

Further, the Court has considered the affidavit, mentioned earlier, that Plaintiff filed in opposition to Defendants' Motion to Transfer Venue.   On February 26, 2018, Plaintiff submitted papers (ECF No. 42) in opposition to Defendants' motion to transfer venue to the Northern District of New York.   As stated earlier, in the affidavit Plaintiff asserted that the "11 year SHU sentence" about which he is complaining had been served at Elmira and Southport, in the Western District of New York, and not a Great Meadow, located in the Northern District of New York.   Later in that same document, Plaintiff reiterated that any constitutional violations had occurred at either Elmira or Southport.   The submission did not assert that any constitutional violation had occurred at Great Meadow.

On March 13, 2019, Defendants filed a Reply (ECF No. 90).   In it, Defendants preliminarily point out that Plaintiff failed to file a counter-statement of facts, and argue that the Court should therefore accept that facts as stated in Defendants' Statement of Facts.   Next, Defendants point out that the majority of Plaintiff's opposition pertains to matters that are not presently before the Court.   Defendants further contend that Plaintiff's

---

[47] ECF No. 89-2 at p. 9, ¶ 23.

contention, that CORC deleted records of Plaintiff's administrative appeals, is implausible and unsubstantiated.  Defendants also maintain that Plaintiff's recusal motion is baseless.

The Court has considered the parties' submissions and the entire record.

DISCUSSION

### Plaintiff's Pro Se Status

Because Plaintiff is proceeding *pro se*, the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).[48]   In this regard, as noted earlier the Court has not only considered Plaintiff's response to Defendants' summary judgment motion, but has considered the entire record, including affidavits that he previously submitted in this action, when considering whether he has shown that there are triable issues of material fact precluding a grant of summary judgment.

### Motion to Recuse

As part of his response to Defendants' motion for summary judgment, Plaintiff contends that the Court should recuse itself from this action.  Plaintiff maintains that the Court must recuse itself for two reasons:  First, because it ruled against him in an earlier proceeding, *Encarnacion v McGinnis*, 02-CV-6380, while lacking jurisdiction; and, second, because it dismissed his double jeopardy claim in this action.  The latter objection is easily disposed of, since it was Judge Larimer, not the undersigned, who dismissed Plaintiff's double jeopardy claim from this action.[49]  *See*, ECF No. 18.  As for the former

---

[48] At the same time, it cannot be denied that Plaintiff is a very experienced *pro se* litigator, having litigated six separate matters just in the Western District of New York.  Indeed, Plaintiff has at times asked the Court to change deadlines to allow him to work on matters that he had pending in other courts. *See, e.g.,* ECF No. 38-1 at ¶ 8 ("On May 10, 2017, the parties attended a Rule 16 conference, wherein Plaintiff was assisted by a Spanish interpreter and requested that the discovery deadlines be postponed until in or about the end of 2017, given that he had other ongoing litigation matters.").

[49] To the extent that Plaintiff may have been referring to the undersigned's earlier dismissal of the double

objection, while the Court has no memory of the action to which Plaintiff refers, it can see from the docket that on October 27, 2005, it dismissed a habeas petition, pursuant to 28 U.S.C. § 2254, in which Plaintiff challenged the Tier III disciplinary conviction that resulted in his 10-year SHU sentence. *See*, 6:02-CV-6380 CJS, *Encarnacion v. McGinnis*, ECF No. 7.  The Court dismissed the petition after finding that Plaintiff's double jeopardy and due process claims lacked merit.  Plaintiff appealed but the Second Circuit dismissed the appeal.  The Court sees no indication that it lacked jurisdiction over the matter, contrary to what Plaintiff now claims.  In any event, the fact that the Court previously made a ruling adverse to Plaintiff is not a sufficient basis to grant his recusal motion. *See, Chen v. Chen Qualified Settlement Fund*, 552 F.3d 218, 227 (2d Cir. 2009) ("Generally, claims of judicial bias must be based on extrajudicial matters, and adverse rulings, without more, will rarely suffice to provide a reasonable basis for questioning a judge's impartiality.").  Accordingly, Plaintiff's motion for recusal is denied and the Court will proceed to consider Defendants' summary judgment motion.

### Rule 56

Defendants have moved for summary judgment pursuant to Fed. R. Civ. P. 56. Summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been

---

jeopardy claim in his habeas petition, the argument nevertheless lacks merit.

satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.).

"In moving for summary judgment against a party who will bear the ultimate burden of

proof at trial, the movant may satisfy this burden by pointing to an absence of evidence

to support an essential element of the nonmoving party's claim." *Gummo v. Village of*

*Depew*, 75 F.3d 98, 107 (2d Cir.1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–

23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts

showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To do this, the non-moving party must

present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at

249.  The underlying facts contained in affidavits, attached exhibits, and depositions, must

be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369

U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Summary judgment is appropriate

only where, "after drawing all reasonable inferences in favor of the party against whom

summary judgment is sought, no reasonable trier of fact could find in favor of the non-

moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

### Section 1983

Section 1983 "is not itself a source of a substantive rights, but merely provides a

method for vindication of federal rights elsewhere conferred." *Long v. Crowley*, No.

09BCVB00456A(F), 2012 WL 1202181 (W.D.N.Y. Mar. 22, 2012) (citations and internal

quotation marks omitted). To establish individual liability under Section 1983, a plaintiff

must show that the defendant acted under color of state law and caused the plaintiff to

be deprived of a constitutional right. 42 U.S.C. § 1983.

<u>8th Amendment SHU Claim</u>

Plaintiff alleges that his long confinement in SHU constituted cruel and unusual punishment in violation of the 8th Amendment. Regarding such a claim generally, the Second Circuit has stated:

> Confinement in a prison or in an isolation cell is a form of punishment subject to scrutiny under Eighth Amendment standards. In order to establish an Eighth Amendment violation, an inmate must show (1) a deprivation that is objectively, sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) a sufficiently culpable state of mind on the part of the defendant official. Although it is perfectly obvious that every decision to remove a particular inmate from the general prison population for an indeterminate period could not be characterized as cruel and unusual, it is equally plain that the length of confinement cannot be ignored in deciding whether the overall conditions of confinement meet constitutional standards. In other words, whether incarceration in the SHU violates the Eighth Amendment . . . depends on the duration and conditions of the confinement. An Eighth Amendment claim predicated on SHU confinement therefore typically accrues only after an inmate has been confined in the SHU for a prolonged period of time.

*Gonzalez v. Hasty*, 802 F.3d 212, 224 (2d Cir. 2015) (citations and internal quotation marks omitted).

<u>Statute of Limitations</u>

Plaintiff's Section 1983 claim is subject to a three-year statute of limitations. *Cotto v. City of New York*, No. 17-2845, 2020 WL 1228765 (2d Cir. Mar. 13, 2020) ("Section 1983 actions filed in New York are . . . subject to a three-year statute of limitations." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013)). As mentioned earlier, Plaintiff's opposition papers do not directly address Defendants' statute of limitations argument. Nevertheless, because Plaintiff is proceeding *pro se*, the Court has *sua sponte* considered whether equitable tolling might apply to extend the limitations period, but sees

nothing in the record to suggest that equitable tolling should apply here.[50]

As mentioned earlier, Plaintiff commenced this action on March 8, 2012.  Three years prior to that date was March 8, 2009.   On March 8, 2009, Plaintiff was at Great Meadow, and was three days away from completing his keeplock disciplinary sentences.[51]  Plaintiff asserts, in conclusory fashion, that he actually was in SHU at Great Meadow, not keeplock.  However, the record shows otherwise.  In that regard, as noted earlier, the unrefuted records from DOCCS show that Plaintiff's SHU sentence ended in November 2008, at which time he was transferred from Southport to Great Meadow, where he was to serve his keeplock sentences.  Moreover, the claim that Plaintiff filed in January 2009, demanding back wages lost while in SHU, indicates that Plaintiff's SHU sentence had already ended. (Am. Compl., Exhibit F).  In that regard, the whole point of Plaintiff's claim was that he was seeking compensation (back wages) lost during his already-completed SHU sentence, which, he maintained, had lasted for "11 years, [or] 468 weeks."  Plaintiff would not have been able to say that his SHU sentence had lasted for "11 years or 468 weeks" unless it had already ended.  Similarly, the response denying that claim indicated that Plaintiff's SHU sentence had already ended, since it referred to his SHU sentence in the past tense, stating: ""This is not a lost property claim.

---

[50] *See, Ash v. City of New York*, No. 1:16-CV-9548-GHW, 2020 WL 58240, at *7 (S.D.N.Y. Jan. 6, 2020) ("Although Mr. Ash does not explicitly argue that he is entitled to equitable tolling, the Court addresses the issue sua sponte because Mr. Ash is proceeding *pro se.* "Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996) (citation omitted). The Second Circuit "has applied the doctrine as a matter of fairness where a plaintiff has been prevented in some extraordinary way from exercising his rights, or has asserted his rights in the wrong forum." *Id.* (quotation omitted). "[E]quitable tolling is only appropriate in rare and exceptional circumstances." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (brackets and quotation omitted). "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Id.* at 80–81.").
[51] ECF No. 38-1 at p. 52.

Misbehavior reports indicate your admission to SHU. Loss of Grade 5 program when you *were* in SHU." In sum, despite Plaintiff's unsubstantiated statement that his SHU sentence continued after he was transferred to Great Meadow, the record indicates that his SHU sentence ended in November 2008, which was more than three years before he commenced this action. Consequently, Plaintiff's 8th Amendment claim, based on his confinement in SHU, is time barred, and Defendants should be granted summary judgment.

However, in the event that a reviewing court might disagree with the Court's finding in that regard, the Court will continue and assume, for the sake of argument, that Plaintiff was actually in SHU at Great Meadow, and not keeplock, as he maintains. In particular, the Court will, in the alternative, accept as true Plaintiff's contention that he was placed in SHU upon his arrival at Great Meadow in November 2008 and remained there until March 11, 2009. If that were true, then Plaintiff would still have been in SHU within the 3-year limitations period.

However, the Court need not and does not accept Plaintiff's oft-repeated but unsupported assertion that all of the SHU time he served between February 1998 and March 2009 was related to the "same incident," namely the incident at Auburn on August 10, 1996. Rather, as discussed earlier, the record is undisputed that any keeplock/SHU time that Plaintiff served at Great Meadow was due to disciplinary infractions committed while he was already serving his SHU sentence. In particular, Plaintiff served his SHU sentences for homicide, promoting contraband and assaulting his attorney, at Elmira and Southport, and once those sentences were completed, he was transferred to Great Meadow to serve his remaining much-shorter keeplock sentences.

31

Since the disciplinary sentences that Plaintiff served at Great Meadow are so clearly *unrelated factually* to the sentences that he served at Elmira and Southport, and even though Plaintiff has not made any arguments to this effect, the Court assumes that Plaintiff is claiming otherwise for reasons related to the statute of limitations.  That is, it seems that in claiming that he spent time in SHU at Great Meadow within the three-year limitations period, Plaintiff is attempting to assert a type of "continuing violation" claim in order to have any claims arising at Elmira and Southport, which would otherwise be clearly untimely, deemed timely.  In other words, Plaintiff is attempting to aggregate all of his SHU/keeplock sentences into one "continuing" 8th Amendment claim.

In this regard, the legal principles governing the "continuing violation doctrine," which applies to cases involving Section 1983, area as follows:

> The continuing violation doctrine, where applicable, provides an exception to the normal knew-or-should-have-known accrual date.  It applies to claims composed of a series of separate acts that collectively constitute one unlawful practice.  The continuing violation doctrine thus applies not to discrete unlawful acts, even where those discrete acts are part of a "serial violation," but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment.
>
> Accordingly, where the continuing violation doctrine applies, the limitations period begins to run when the defendant has engaged in enough activity to make out an actionable claim.   A claim will be timely, however, only if the plaintiff alleges some non-time-barred acts contributing to the alleged violation.
>
> The continuing violation doctrine typically arises in the context of a complaint of unlawful workplace discrimination challenged under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.
>
> ***
>
> [However, w]hile the doctrine's use is most often encountered in connection with actions asserting Title VII violations, its application is by no means limited to that context. We have, for example, applied it to an Eighth

> Amendment claim of deliberate indifference to serious medical needs brought under 42 U.S.C. § 1983 where the prisoner challenged a series of acts that together comprised his claim. We have also applied it to an unlawful takings claim under section 1983.

*Gonzalez v. Hasty*, 802 F.3d at 220–21 (citations, footnotes and internal quotation marks omitted).

> That the continuing violation doctrine can apply, however, does not mean it must. To assert a continuing violation for statute of limitations purposes, the plaintiff must allege both the existence of an ongoing *policy* of [unconstitutional conduct] and some non-time-barred acts taken in the furtherance of that *policy*.

*Shomo v. City of New York*, 579 F.3d 176, 182 (2d Cir. 2009) (emphasis added; citation and internal quotation marks omitted).

Here, to the extent that Plaintiff may be attempting to assert discrete 8th Amendment "deprivation" claims, the Court finds that such claims are not covered by the continuing violation doctrine and are therefore time barred. In that regard, as discussed earlier Plaintiff has repeatedly stated that the "deprivations" occurred at Elmira and Southport, and would therefore have occurred more than three years before Plaintiff commenced this action. The record gives no indication that any similar "deprivations" occurred at Great Meadow, within the limitations period. To the contrary, Plaintiff implicitly argued, as part of his opposition to Defendants' motion to transfer venue, that no such deprivations had occurred at Great Meadow, in the Northern District of New York. Accordingly, insofar as Plaintiff may be attempting to assert discrete "deprivation" claims under the 8th Amendment, Defendants are entitled to summary judgment on the "deprivation" claims based on the statute of limitations.

However, the Second Circuit, when remanding the case for the second time, indicated that Plaintiff's 8th Amendment claim should more properly be viewed as a claim based on his "overall conditions of confinement," including the length of time in SHU and any "deprivations" that may have occurred.  Consequently, the Court finds that the continuing violation doctrine could apply to Plaintiff's "overall time in SHU claim" insofar as it pertains to an alleged "series of separate acts that collectively constitute one unlawful practice," namely, requiring an inmate to spend a continuous amount of time in SHU that is so long that it has become cruel and unusual punishment.  Moreover, although the discrete "deprivation" claims are time barred, the deprivations may be considered when evaluating the "overall time in SHU claim." *See*, Second Circuit Mandate, ECF No. 22 ("[T]he district erred in dismissing Encarnacion's amended complaint *sua sponte* because it did not consider the overall conditions of confinement of his SHU sentence. In particular, the District Court failed to consider the relevance of Encarnacion's 11-year confinement in SHU. Moreover, Encarnacion alleged that he was deprived of hygiene products and "daily meals" while in SHU. The district court also should have considered those allegations as part of the overall conditions of his SHU confinement.").

Even assuming, though, that the continuing violation doctrine applies to Plaintiff's SHU claim, that does not mean that his claims are timely as against each of the defendants.  Rather, "[t]he continuing violation doctrine does not save claims against a particular defendant where all of that defendant's alleged acts occurred outside the statute of limitations." *Marquez v. Annucci*, No. 20 CIV. 1974 (AKH), 2020 WL 3871362, at *3 (S.D.N.Y. July 9, 2020) (citation omitted); *see also, Marshall v. Annucci*, No. 16-CV-8622 (NSR), 2018 WL 1449522, at *6 (S.D.N.Y. Mar. 22, 2018)  ("[T]he Second Circuit's

decision in *Shomo v. City of New York*, 579 F.3d 176 (2009), underscores that a court must engage in the continuing violation analysis as to each individual defendant. In *Shomo*, the Second Circuit recognized that the continuing violation doctrine may apply to prisoners' Eighth Amendment claims, but nonetheless upheld the district court's dismissal of claims against defendants whose last contact with plaintiff was outside of the statute of limitations period. *Id.* at 184.").

In this case, even assuming that the continuing violation doctrine applies, this action is still untimely as to Goord, Selsky and McGinnis, since the acts attributed to them all occurred in connection with Plaintiff's SHU sentences that were served at Elmira and Southport, outside of the three-year limitations period.  In sum, Goord, Selsky and McGinnis are entitled to summary judgment pursuant to the statute of limitations even assuming that the continuing violation doctrine applies.

The action could be timely as to defendant Rock, assuming that Rock committed a wrongful act within the limitations period, that is, prior to March 8, 2009, that was part of the same "policy" of unconstitutional conduct that allegedly also occurred at Elmira and Southport.  However, the record contains no evidence of that.

The keeplock/SHU sentences that Plaintiff served at Great Meadow had nothing to do with either the SHU sentence that he served for the incident on August 10, 1996, or the SHU sentence related to assaulting his attorney.  Further, there is no indication that Rock was personally aware that Plaintiff had been transferred to Great Meadow from Southport or that Plaintiff had been in SHU for almost eleven consecutive years before arriving at Great Meadow.[52]  Additionally, the character of Plaintiff's SHU time at Great

---

[52] To be liable under Section 1983, a defendant must have been personally involved in the constitutional violation.

Meadow is different that his SHU time at Elmira and Southport since, for example, he does not alleged that any "deprivations" occurred at Great Meadow.  Accordingly, there is no indication that the relatively brief time that Plaintiff spent in keeplock or SHU at Great Meadow was part of an ongoing "policy" of unconstitutional confinement directed at him. *See*, *Bailey v. Colgate-Palmolive Co.*, No. 99 CIV. 3228 (CBM), 2003 WL 21108325, at *9 (S.D.N.Y. May 14, 2003) ("[I]nasmuch as plaintiff does not present any evidence which might connect seemingly episodic occurrences and actions by different individuals to a controlling policy or practice, he cannot avail himself of the continuing violation doctrine."), *aff'd*, 93 F. 321 (2d Cir. 2004).  In sum, even assuming that Plaintiff was in SHU at Great Meadow within three years of him commencing this action, the continuing violation doctrine does not operate to make timely the aspect of his claim relating to Southport and Elmira.

Nor does the record indicate that Plaintiff has any "stand alone" claim against Rock that would be timely.    Although the record indicates that Plaintiff was confined at Great Meadow, where Rock was the Superintendent, between November 2008 and March 8, 2009, the Amended Complaint does not allege any actionable conduct or omission by Rock within that period.  Rather, the Amended Complaint contains only a single assertion of wrongdoing by Rock, which is the same blanket allegation that it made against the other three defendants, namely, that Rock "confined [Plaintiff] in SHU 23 to 24 hours a day in solitary confinement daily for over of 11-year arose from the same underlying 8/10/96 incident illegally." [sic] Amended Complaint, ECF No. 16 at p. 5.[53]  However, as already discussed, that bald assertion is indisputably incorrect, since Rock had no

---

[53] As already mentioned, the record contains no indication that Plaintiff suffered any "deprivations" while at Great Meadow.

involvement in confining Plaintiff to SHU related to the homicide at Auburn Correctional Facility on August 10, 1996.  (Nor, for that matter, did Rock have any involvement in the disciplinary incidents at Southport that resulted in Plaintiff receiving additional keeplock sentences; he was merely the Superintendent of the facility at which Plaintiff ultimately served those sentences).  Nor is there any indication that Rock committed any other type of constitutional violation against Plaintiff at Great Meadow on or before March 8, 2009 (or at any other time).

For all of the foregoing reasons, the Court finds that Defendants are entitled to summary judgment based on the statute of limitations.

Exhaustion of Administrative Remedies

Defendants alternatively maintain that they are entitled to summary judgment based on Plaintiff's failure to administratively exhaust his claim before filing this action.  A prison inmate is required to exhaust his administrative remedies *before* asserting a federal claim in federal court complaining about prison conditions. *See*, 42 U.S.C.A. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").

For purposes of 42 U.S.C. § 1997e(a), New York inmates in the custody of DOCCS are required to pursue their administrative grievances using New York's Inmate Grievance Program:

> As an inmate of the New York State Department of Corrections and Community Supervision ("DOCCS"), Plaintiff was required to submit his grievances through the New York DOCCS' Inmate Grievance Program ("IGP"). The IGP has a three-tiered process for adjudicating complaints: "(1) the prisoner files a grievance with the Inmate Grievance Resolution Committee ('IGRC'), (2) the prisoner may appeal an adverse decision by the IGRC to the superintendent of the facility, and (3) the

prisoner then may appeal an adverse decision by the superintendent to the Central Office Review Committee ('CORC')." *Espinal v. Goord*, 558 F.3d 119, 125 (2d Cir.2009) (citing 7 N.Y. Comp.Codes R. & Regs. § 701.7 (1999)).

*Dabney v. Pegano*, 604 F. App'x 1, 3 (2d Cir. Feb. 1, 2015). However, despite this general requirement,

> [p]risoners are exempt from the exhaustion requirement when administrative remedies are unavailable. An administrative procedure is unavailable when (1) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) it is so opaque that it becomes, practically speaking, incapable of use; or (3) prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

*Amaker v. Bradt*, 745 F. App'x 412 (2d Cir. Dec. 19, 2018) (citations and internal quotation marks omitted).

If administrative remedies were "available" to the inmate plaintiff, then he must have "properly" exhausted his remedies:

> Proper exhaustion demands compliance with a prison grievance system's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

*Williams v. Correction Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90-91, 126 S.Ct. 2378 (2006), internal quotation marks omitted).

Here, for reasons already mentioned earlier the Court agrees with Defendants that Plaintiff failed to exhaust his administrative remedies as to his 8th Amendment SHU conditions of confinement claim.[54]   Defendants contend, and Plaintiff agreed in his

---

[54] Plaintiff does not claim that administrative remedies were unavailable to him.

Amended Complaint, that the only grievance he exhausted that is even remotely connected to this action is the one he filed in January 2009, seeking back wages for the time he had spent in SHU at Elmira and Southport.  Although the claim/grievance stated that Plaintiff was also seeking money damages ($150 per day) for "mental and physical pains and distress for the illegally SHU for 11 years" [sic], that vague statement, inserted within a claim expressly designated as being for lost wages, does not amount to proper exhaustion of the claim being asserted here. *See, Edwards v Melendez*, No. 19-753,  --- Fed..Appx. --- , 2020 WL 6154890, at *2 (2d Cir. Oct. 21, 2020) ("Although a plaintiff need not specifically articulate his claims in grievances in the exact same manner that he articulates them in federal court, he is required to give notice to the defendants about the factual basis of his claims. *See Espinal v. Goord*, 558 F.3d 119, 127–28 (2d Cir. 2009); *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004)."); *see also, Munger v. Cahill*, 792 F. App'x 110, 111 (2d Cir. 2020) ("In New York, a specific defendant need not be named in the grievance to exhaust administrative remedies.  Nevertheless, the grievance should contain a concise, specific description of the problem.") (citation and internal quotation marks omitted).

As already discussed, during Plaintiff's deposition he asserted that he had filed other grievances pertaining to the conditions of his confinement in SHU, but he could provide no evidence of that and had no recollection of what he had allegedly stated in those grievances. Further, in response to the evidence submitted from CORC indicating that Plaintiff had never exhausted any grievance except the one seeking lost wages, Plaintiff merely alleges that employees at CORC must have destroyed the evidence. However, in addition to being completely unsubstantiated, Plaintiff's assertions on these

points are also contrary to the Amended Complaint, in which Plaintiff alleged that he had exhausted his SHU conditions of confinement claim by filing the January 2009 "lost wages" grievance.

In sum, the Court finds that Defendants have made the required initial showing under Rule 56 relating to exhaustion, and that Plaintiff has failed to come forward with evidence indicating the existence of triable issue of fact on this issue. Consequently, Defendants are entitled to summary judgment based on Plaintiff's failure to exhaust.

<u>Personal Involvement</u>

Defendants alternatively maintain that they are entitled to summary judgment because Plaintiff cannot show that any of them was personally involved in the alleged 8th Amendment violation. To establish liability against an official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). The theory of respondeat superior is not available in a § 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Accordingly, "[a] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016), as amended (Feb. 24, 2016) (*citing Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996).

> Direct participation is not always necessary to establish liability. A supervisory official may be personally liable if he or she has actual or constructive notice of unconstitutional practices and demonstrates gross negligence or deliberate indifference by failing to act. We cannot say, however, that an allegation that a supervisory official ignored a letter protesting past unconstitutional conduct is, without more, sufficient to state a claim that the official was "personally involved" in the unconstitutional

40

conduct.

*Platt v. Inc. Vill. of Southampton*, 391 F. App'x 62, 65 (2d Cir. 2010) (citations and internal quotation marks omitted).

Here, as discussed earlier Defendants contend that Plaintiff never put them on notice of the claim being asserted here, relating to his conditions of confinement in SHU. Plaintiff claims otherwise,  but offers no evidence that would create a triable issue of fact. In that regard, Plaintiff states that he talked to Defendants when they toured the SHU, and sent them letters, but he cannot recall when he spoke to Defendants, or what he said or wrote to them.  Moreover, Plaintiff could not even provide a general physical description of McGinnis or Rock.  Plaintiff's most specific evidence on this point is his deposition testimony that when he spoke to Goord, Selsky and McGinnis, he asked them to release him from SHU, to which they responded that he would be released when his SHU sentence was completed.  However, even assuming that to be true, Plaintiff's request to be released from SHU would not have put those defendants on notice that Plaintiff was complaining of an 8th Amendment violation.   Consequently, the Court finds that Defendants are entitled to summary judgment based on Plaintiff's failure to demonstrate that they were personally involved in the alleged 8th Amendment violation.

<u>Defendants' Arguments Directed at the Merits</u>

Because the Court has found that Defendants are entitled to summary judgment on multiple grounds, it declines to consider Defendants' additional arguments directed at the merits of Plaintiff's claim.

CONCLUSION

Defendants' motion for summary judgment [#87] is granted and this action is dismissed with prejudice.   The Clerk of the Court is directed to enter judgment for Defendants and close this action.

SO ORDERED.

Dated: Rochester, New York
October  27, 2020

ENTER:

CHARLES J. SIRAGUSA
United States District Judge